Joseph Liff, J,
In an application by an order to show cause plaintiffs seek to prevent the Superintendent of Insurance, pending the determination of this action for declaratory judgment, from proceeding on a citation issued pursuant to sections 22, 23 and 37-1 of the Insurance Law. The objective of the Superintendent’s proceeding is to remove trustee/directors of the Industry Promotion Fund, International Union of Operating Engineers, Local 138,138A and 138B, because of1 alleged impro *73 prieties. The plaintiffs contend that since the fund does not fall within the provisions of article 3-A of the Insurance Law, the Superintendent is without supervisory authority.
The order to show cause above referred to was received by the General Counsel to the Insurance Department on September 29,1972. The first return date was October 5,1972. The matter was adjourned on a number of occasions, presumably by stipulation, until it was finally submitted on December 26. On November 15, 1972 the Attorney-General, appearing on behalf of the defendant, cross-moved to dismiss the complaint for failure to state a cause of action. Having thus appeared generally to contest the matter on its merits, on December 19 the Attorney-General made a .second application to dismiss the complaint for the reason that plaintiffs had failed to comply with subdivision (d) of CPLR 2214 which requires that in addition to serving the defendant, a copy of the order be served upon the Attorney-General (for a comparable provision, CPLR 7804, subd. [c]). The jurisdictional question thus raised should be disposed of before proceeding to the principal issue.
In the particular circumstances we do not regard the failure to serve the Attorney-General as jurisdictional. The technical defect has been waived and Matter of Chem-Trol Pollution Servs. v. Ingraham (71 Misc 2d 678) is distinguishable and not controlling. In that action the Attorney-General appeared solely for the purpose of objecting to jurisdiction on the ground of improper services. There has been no prejudice, and while this decision should not be taken as approving the failure to comply with the requirement for serving the Attorney-General in accordance with the statutory provisions, in this instance, the motion to dismiss for that reason is denied (cf. Teresta v. City of New York, 304 N. Y. 440; Petronis v. State of New York, 170 Misc. 223; cf. Supplementary Practice Comment of Professor Joseph M. McLaughlin, McKinney’s Cons. Laws of N. Y., Book 7B, CPLR 2214, 1972-1973 Supplement).
The question now left for determination is: “ Does the fund fall within the provisions of article 3-A of the Insurance Law? ” It was created by an agreement and declaration of trust. Perhaps more of the intent and purposes of the fund can be gathered from the introductory “ whereas ” clauses than from the principal body of the instrument. Payments to the fund were made by employers in the building industry of “ a sum of money equal to the agreed and specified percentage, or amounts, of the total wages, or on hours worked, during the preceding pay period, paid to those of its employees who are covered *74 and entitled to the benefits of this agreement ’ ’ (first whereas clause). Some confusion arises from the foregoing because a percentage could be computed on the basis of wages paid but not on hours worked unless these were to be multiplied by the rate per hour. A later provision is to the effect that the purposes of the fund 1 ‘ are singly motivated for the benefit, advancement, improvement and promotion of the construction industry and/or Local Union” (third whereas clause). The objective of the fifth of these clauses is uncertain. It states that the sums were to be expended prudently by the directors ‘ ‘ to secure safety education programs, to promote and foster harmony between labor organizations and parties to the collective bargaining agreement, and to maintain and increase the good will value in public and industrial relations between the employer and members of this organization.” After the five introductory provisions and the recital of the customary clause setting forth consideration there follow 37 paragraphs. Most of the agreement deals with administrative matters for the operation of the fund. The only definition of purposes is in paragraph sixth which contains six subdivisions which almost entirely dwell on matters such as the hiring of employees for the fund, the renting of .space, etc. A vague provision occurs in subdivision (c): “(e) To pay or provide for the payment of all reasonable expenses for such purposes and to such persons as the Directors may, in their sole discretion, determine to be necessary and proper in order to effectuate the purposes as set forth herein.” To what “ purposes ” does this provision refer? We search in vain for a definition of “ purposes ”. Is it for the benefit of the employees in the industry or is it only for those purposes set forth in paragraph sixth? We have not been asked to decide whether this fund falls within the provisions of subdivision (c) of section 186 of title 29 of the United States Code or comes within the prohibition of an unlawful agreement as defined in the earlier provisions of the same section 186 (subd. [c]).
It is the policy of this State to supervise employee welfare funds so that the rights of employees and their families to the benefits thereof may be protected (Insurance Law, § 37; see message of the Governor, N. Y. Legis. Annual, 1956, p. 482; and memorandum of State Banking Department, McKinney’s 1956 Sess. Laws of N. Y., p. 1932). Does the fund here qualify as an employee welfare fund so as to be subject to supervision by the State of New York? “ The term ‘ employee welfare fund’ * * * shall mean any trust; fund or other *75 fund established or maintained jointly by one or more employers together with one or more labor organizations, whether directly or through trustees, to provide employee benefits, by the pur-1 chase of insurance or annuity contracts or otherwise, and to which is paid or contracted to be paid anything, other than income from investments of such fund for the benefit of employees (Insurance Law, § 37-a, subd. 1.) The term “ employee benefits ” means: “ one or more benefits or services for employees or their families or dependents, or for both, including, but not limited to, medical, surgical or hospital care or benefits, benefits in the event of sickness, accident, disability or death, benefits in the event of unemployment, or retirement benefits.” (Insurance Law, § 37-a, subd. 2).
When the Court of Appeals reviewed the quoted language it held that funds established for vacation plans were within the scope of article 3-A of the Insurance Law and that the definition of a fund “means a fund not established through insurance or annuity contracts as well as funds established by these means; and hence it means a fund established directly by employer contributions to trustees ” and the court (in an apparent reference to Insurance Law, § 37-a, subd. 2) emphasized that employee benefits are “expressly ‘not limited to’ that list.” (McKay v. Stewart, 29 N Y 2d 563, 565). The fund was to be administered by a board of directors consisting of eight members, four designated by the union and an equal number by the employers. Thus we conclude that the fund comes within the definition of an employee welfare fund as defined in subdivision 1 of section 37-a of the Insurance Law.
Whether it is an employee benefit fund may also be ascertained from the conduct of the parties. We have examined the agreement and the stated purposes. Paragraph thirty seventh provides that the directors of the fund should be accountable only to the State of New York. Following the making of the agreement in July of 1966, the firm of accountants then employed by the Fund registered it with the Superintendent of Insurance although plaintiffs now seek to disown that act.
However, any lingering doubt as to the Superintendent’s jurisdiction over this fund is dispelled when we find that the funds may also be used: “ To pay to the Welfare Fund, and Pension Fund, Locals 138, 138A and 138B, International Union of Operating Engineers, such payments as may be required under the terms of the collective bargaining agreement so as *76 to provide welfare and pension fund benefits to all employees of this Fund as though said employees were employed under the jurisdiction of and covered by the collective bargaining agreement.”
For the foregoing reasons the court grants defendant’s motion to dismiss this action and declares that the “ Industry Promotion Fund ” is subject to review and investigation by the Superintendent of Insurance. The stay contained in the order to show causé is vacated.